Good morning. May it please the Court, my name is Karya Hong and I represent Petitioner Parminder Singh Chawla. Because this case involves a father and son with the same last name, I will refer to Petitioner by his first name, Parminder, and his father by Charanjeet. I.J. made two reversible errors when denying Parminder's asylum claim. In the first error, he found that there was no past persecution. However, he did so by focusing on only one incident, which was the arrest and beating of Parminder. This was error because under Prasad, the Ninth Circuit counsels that the fact finder needs to account for evidence of cumulative harm, which in this instance involved both the ten years of persecution against Charanjeet, as well as the three incidents of the home invasion interrogations by the security forces against Parminder. That was a failure to consider that. That's really why this has to be remanded for the I.J. then to consider all of the circumstances, including what you just articulated on remand. That's your position. Yes, Your Honor. In addition, the I.J. also overlooked the severity of medical treatment. He determined that the medical treatment only consisted of a vaccination when the test finding was actually fluids, painkillers, and lasting swelling and pain. And then, in addition, the I.J. notably overlooked the fact that the security forces engaged in active pursuit against Parminder both in India as well as in the United States. Let me shift the landscape slightly. It may be irrelevant in terms of the law, but I'm certainly curious about the father-son relationship. It seems that the father comes and goes as he pleases.  But I guess he came to the United States to support his son's application. Can you clarify that for me? Because that was the basis, I guess, of the I.J. turning thumbs down on the imputed political belief standard. Yes, Your Honor. The father does not go freely. As he testified in court, he is the subject of repeated extortion attempts. And every time he leaves his home, the police hone in on Parminder's vulnerability. And after Parminder's arrest, made clear to Parminder and Charanjeev that they will continue to go after Parminder as a way to try and stop the father from continuing in what they believe his engagement in political activities in support of the separatists. He testified that his father's made eight or nine different trips to the United States for the leather goods business. Is it your position that he's being shaken down every time he comes through New Delhi on a trip back from the United States? Well, the testimony doesn't say it's every time, but it still is occurring. And even after Parminder left, the police came back looking for Parminder, as well as then targeting his cousin as a way to extort money from the father. And on that point, on the second point where the IJ failed to make an accurate finding that Parminder was persecuted on account of protected ground, the IJ overlooked the fact that the father explained to the IJ that he was being extorted because he's perceived as a political opponent of the security forces. This was actually a finding in the IJ's decision himself which he overlooked when analyzing this question. And we have to accept the credibility of that, apparently, because the board reversed the credibility determination. Yes, Your Honor. And also, then, the court also has to accept that the words that were spoken to Parminder during his arrest and beating in which the police called him a calisthenic dog, said that his father supported Sikh militants, the police informed him that they were harming him as a means to stop his father's political support. And then when the father showed up to release him from custody, the police said, this is a lesson to you. I have some trouble concluding that this one incident and the pattern of harassment is enough to establish persecution, particularly under the GU, GU case. Help us out with that. Does this really constitute persecution? Yes, Your Honor. Under the GU case, the GU, there was only one incident and there was no continued interest by the police. In fact, the police stopped their interest in the applicant's religious activities. By contrast, in the GUO case, the G-U-O case, the court, this court, reversed the lack of persecution finding on the basis that there was continued pursuit by the police of the Chinese National and also under Kratova, that in that instance, the IJ inaccurately minimized the physical abuse, which is what the IJ did in Parminder's instance, and also did not take into account the prior incidents that both Kratova experienced and also Parminder and his father experienced. Well, what precisely was the persecution? What were the acts of persecution in this case? Well, it was his father being targeted for repeated acts of extortion. The targeted, that's not persecution, is it? Yes, it is when it's coupled in this instance where the extortion is targeted because he is a political enemy. And for that, we have the Ferenyak and the Bagunasarian cases, which are set in a Rule 28 letter to the court, which combines that when there is extortion, greed by the police forces alone cannot defeat a finding that the harm was on a protected ground when there's also evidence that the persecutors were using words that events a protected ground. In this instance, when they told Parminder, you're a calisthenic dog, that we are trying to stop your father's activities, that places the police's motivation into a mixed motive analysis. In addition, those words used by the police officer against Parminder, it's analogous to the Kulver Singh incident, which is factually and canonically analogous, in which the Third Circuit determined that the targeting of the child of a political opponent by the police constitutes an imputed political opinion standing on its own, and that those facts were also in the Ninth Circuit cases, Lopez-Galarza. Okay. Well, I'm concerned about this case. As I see it, there was one five-hour detention accompanied by a beating that, though involving 15 to 20 strikes with a stick and a knee in the back, did not result in serious injuries and a once-a-year pattern of harassment and bribes traced to the father's experience back in the 1990s. That can't be torture. That can't be enough to establish persecution, can it? It can under glow. Under glow, it was just a simple one arrest in a house church. He was detained at the police station for one and a half days. He was struck twice in the face. He was made to do push-ups. He was kicked in the stomach. In the glow case, the Court found that that was significant because there was continued police persecution, and that hallmark of persecution also exists here in Parminder's case. He had death threats here also, did you not? Yes. Yes, Your Honor. And how do you view those death threats in the context of the question that Judge Escanla just asked you? That would even make it stronger than glow in that the death threats are deemed to be a form of persecution in the Ninth Circuit, especially when they're accompanied with actions. And given that the death threats occurred in the context of the beating and in the context of trying to stop the father's political activities, that does rise to a level of persecution. Anything further? No. May I reserve my time? You certainly may. Yes, absolutely. We'll hear from the government. May it please the Court. Colette Winston for Respondent, Attorney General Eric Holder. The question is that the I.J. made one particular finding, which he said did not rise to the level of the fear of persecution. But is there not enough in this record to justify remand so the I.J. can consider these other factors that your distinguished colleague has pointed out in her opinion? Not only is there not enough in this record, this record does not compel the conclusion that the events here rose to the level of persecution. There were a couple of death threats because the police thought that Mr. Singh was lying to them and said if you continue to lie, we will kill you and your mother. And there was one detention. But calling them Calisthani dogs, I mean, doesn't that enter into the mix? Well, the Calistani dog racial slur enters more into the motivation of the police. And that's the second issue in this case. The first issue is do the events, the threats, and the one incident of a four- to five-hour detention rise to the level of persecution? They had repeated police visits to their home, mistreatment of the father, the mother, death threats, and the pursuit of a child by the police at his home and otherwise. I mean, isn't there something here that requires further reflection by the I.J. rather than to focus on that one isolated situation that he identified as the basis for rejecting his claim? Well, Your Honor, I would say no. I would say that the events here that occurred are very similar to the Prasad case. Where there was a single incident of a detention of four to six hours and a beating, including kicking and hitting. And that was not enough to rise to the... The I.J. didn't even recognize or acknowledge that there were these other circumstances. Don't you think in the first instance the I.J. should have said, well, I also consider these other factors, and I find that they do not support the fear of persecution? I believe the I.J. did review all the factors. And the I.J. is not under any requirement to write an exegesis about every contention. The I.J. did review the evidence, and he came to two conclusions. One, there was no past persecution because the events did not rise to the level of persecution. Persecution is an extreme concept, and there are a multitude of cases from time immemorial that talk about what is required for persecution. But you do agree with the principle of law that you don't take one of these matters in isolation, but you have to consider the totality of the circumstances. You have to consider the entire record. And do you think that that's clear that the I.J. did that in his opinion? Yes, I do. I do think... In his opinion, does he acknowledge that? That he reviewed the whole record? There are many, many pages that talk about what the evidence was that was presented to him, the testimony of the son, the testimony of the father, the fact that he was threatened, the fact that he was detained. I don't believe that the I.J. left anything of any import out in this case. Well, he repeated the facts, but he didn't draw any conclusions from those facts other than the one isolated situation that he pegs his decision on, right? I'm sorry, Your Honor, but I beg to differ. I think that he made an alternative finding after he held that the Petitioner was not credible, and he said, We'll find the Respondent has not suffered past persecution in India. He testified that on one occasion he was held for several hours and beaten during that time. He testified that he did seek medical treatment after this, consisting of pain pills, a vaccination, and similar treatment. He referred to a back injury, but there was nothing suggestive of a serious injury. That all related to that one incident that he relied upon in terms of that particular beating. There was nothing else that he, the I.J., considered or acknowledged that he considered in the context of all this other so-called evidence that he cited here. Well, the spotlight has to be on the Petitioner in this case. Not necessarily on his father. What happened to his father kind of explains what's happening to the Petitioner. And that's really the second issue, is whether there was a nexus here to any protected ground. What happened to the father was a continual harassment by the police to get money from him, because he was a successful business entrepreneur, because he did have a company. And the reason why they focused on his son at all was to continue to put more pressure on the father to give more money. But there's only one single motive in this case. And that motive is to gain money. And I could ‑‑ I don't know why you say that. Chawla testified that during 2000 and 2003, he witnessed six police visits where the terrorist activities of the six separatists. Why do you say this is only all about money? Because the real issue here is what was the motive of the police. And I'd like to read just one quick passage, and I'd like to let us listen to what the father had to say about that. He did say, police accusing me. This is page 210. Police accusing me. I didn't do anything over there. Police was blaming me for the break-ins. Police was blaming me as a calisthenic dog. You are helping Sikh separatists just like that in that time. The question to him is the key question in this case. And that is, I understand. But do you think the police believe this or was just using it to get money out of you? His answer is, police were just using that, escalating to get more money. The police was using this racial slur that they called him and telling him that they felt he was a Sikh separatist as a pretext to escalate pressure on the father. And later, so why would they go after your son? They went after to extort more money. This case has a single motive, and that's extortion. That's extortion of a father who was a wealthy businessman who has continued to pay bribes throughout the years to the Indian police, which he himself says is corrupt. There's corruption in India from the prime minister all the way down, according to his testimony. Were the country condition reports part of the record here? Yes, Your Honor. And they confirmed that, do they not, that bribery by public officials is a very common aspect of life in India? Yes, Your Honor. They confirmed that. And on page 971 of the record, an Amnesty International report from January 2003 states, the police often use torture or the threat of torture to extort money. And that's what this case is about. Number one, the events, the one incident and the threats that occurred to Mr. Singh do not rise to the level of persecution. Number two, there is no requisite nexus to a protected ground. And the record doesn't compel that. Even if a fact finder could reasonably conclude that there are mixed motives here, that's not the standard of review. Well, if you're in a mixed motive, though, then you're up against our Ninth Circuit precedent, are you not, which may very well be different under the Real ID Act. Yes, Your Honor, it is different. This is a pre-Real ID Act case. So how do you get around Ninth Circuit authority that says mixed motive is good enough? I think you're referring to the Gafoor case. And in Gafoor, to have a mixed motive, you have to have more than one motive. And in this case, there's a single motive. Isn't the standard at least in part, it's a very small standard, isn't it? Yes, Your Honor, that's exactly correct. It's a different standard today, but, you know, we're considering a very permissive standard here, aren't we? Well, it's correct that the standard in pre-Real ID Act cases such as this one is at least in part. But this is not, the record doesn't compel the conclusion that it was at least in part because of the father's political opinion imputed to the son. I guess I don't understand that. I know you make that statement, but I'm looking specifically at the testimony which we now have to give credibility to. There's been a change in the credibility determination. So we have to accept whatever the testimony is as being true for present purposes, do we not? So I see on May 16, 2003, the police came to Sharla's home and asked Sharla if he was a Calisthenic dog and if he was helping with his father's terrorist activities. It seems that there's a nexus there to establish at least in part that you're dealing with an imputed scenario. The same thing on May 22 and May 28, he was asked if he was a Calisthenic dog and if he was helping with his father's terrorist activities. I mean, I don't understand why you make this factual statement. Because although perhaps a reasonable fact finder would agree that there are several motives, the record doesn't compel that conclusion. Because if you weigh all the times that each, both the petitioner and the father said, they're after us for our money, they don't want to kill us, they would kill the golden goose. It's all about money. It's all about bribes. It just permeates the record. So that the weight of the evidence is about extortion, money, and bribery. There's just, I don't even believe that at least in part there's a motive for the police. The issue is it's not just at least in part does it factor into the facts. It does. But does that constitute the police's motive to harass both the father and later the son? And I would submit that it does not. Thank you, Counsel. Thank you. Ms. Hong, you have a little reserved time. Thank you, Your Honor. I have three quick points. Regarding the motive question, without even having to go back to the record, the IJ's findings itself on page 61 and 63 of the record find that, quote, that the police was targeting the son to escalate the pressure on the father and to get more money. And on page 63, the father explained, according to the IJ, that, quote, the police were doing this because he, being Charanjit, was a political enemy for reasons going back to the days when he was a court employee. You're talking about the father. Correct. But the case we have is the son. Correct. But the extortion, whereas the government was mischaracterizing the record to say that this was simply a matter of the police engaging in extortion for the sake of greed, the government or the security forces were engaged in extortion as a way to express political opposition against Charanjit and his son Parminzar. On the second point, to the earlier question about whether this is adequate to show past persecution, I'd also like to bring the Court's attention to Kortova, which involves a Russian, a Jewish-Russian woman who was denied, whose children were denied daycare. She was denied a job. Skinheads attacked a synagogue, and she was surrounded and attacked by private citizens. The government or the Ninth Circuit found that those facts were substantial evidence that compelled reversing the IJ decision because, as a cumulative matter, that harm did rise to a level of persecution. I would contend that the harm that Parminzar experienced is equal, if not excessive, of that harm. And then the third point about whether, as the government conceded that bribery is coupled with torture in India and that this bribery, because it is coupled with torture, is more than just extorting greed, extorting money. Under Fedinyak and Badsarian, that evidence shows that extortion does constitute a form of persecution. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument next in Rios-Ortega v. Holder.
judges: O'scannlain, Tallman, Block